**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Normann,<br><br>                    Plaintiff,<br><br>v.<br><br> SDQ Fee LLC;  Kierland Crossing LLC,<br><br>                    Defendants. | No. CV-13-00154-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Summary Judgment, Defendants' Response, and Plaintiff's Reply.  (Docs. 32, 34, 37).  For the following reasons, the Motion for Summary Judgment will be denied, and an Order to Show Cause will issue to Plaintiff to show why summary judgment should not be granted for Defendants on the issue of accessible parking.

**I.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the moving party carries its burden of demonstrating that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Once the moving party has carried its burden under Rule 56, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 U.S. at 256. The facts are "viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     FACTS**

The Americans with Disabilities Act ("ADA") prohibits discrimination against people with disabilities by places of public accommodation. 42 U.S.C. §§ 12181–12189. Defendants SDQ Fee, LLC and Kierland Crossing, LLC lease space to tenants at Scottsdale Quarter, a shopping center and place of public accommodation located in Scottsdale, Arizona. (Doc. 35, ¶ 1). Because it is a place of public accommodation built for first occupancy after January 26, 1993, Scottsdale Quarter must comply with the ADA rules applying to new construction. (Doc. 35 ¶¶ 2, 4); 28 C.F.R. Pt. 36.401(a).

Plaintiff David Normann asserts that he has mobility-related impairments from from secondary multiple sclerosis, a degenerative disease that attacks the brain, spinal cord and optic nerves, and a spinal cord injury. (Doc. 35-1). He asserts that he uses a wheelchair, walker, and crutches for mobility assistance and that the size of his wheelchair van requires him to park in handicap accessible parking spaces. (*Id.*).

Mr. Normann is a patron of Scottsdale Quarter. (Doc. 35-1). He has visited the property on numerous occasions, alone and with family, and has done business with numerous tenants. (*Id.*). During his visits, he claims to have encountered three architectural barriers which have upset him and hurt him as signs of discrimination on account of his disability. (*Id.*). First, he claims Scottsdale Quarter's designated accessible parking spaces are not located in accordance with ADA Accessibility Guidelines. (Doc. 32). He asserts that although Scottsdale Quarter provides accessible spaces in its parking garages, it is required to provide accessible parking on the streets adjacent to store entrances. (*Id.*). Second, Mr. Normann claims Scottsdale Quarter's ramps leading up to certain restaurants are too steep, causing him to experience fatigue and strain. (*Id.*). Finally, he claims the heaviness of the entrance door to a men's

restroom and the lack of maneuvering space make the restroom difficult to access. (*Id*.).

After encountering these barriers, Mr. Normann consulted an expert certified by the International Code Council as an accessibility inspector and plans examiner. (Doc. 35, ¶ 1). The expert, Mr. Paul Faber, identified what he believed were twenty barriers to accessibility on the Scottsdale Quarter property. (*Id*. at ¶ 13). The identified barriers are as follows:

1. Lack of maneuvering clearance at men's room door; heavy door.
2. Family restroom door requires excessive opening force.
3. High mirrors and heavy door require excessive opening force.
4. High changing counter and dispenser at family restroom.
5. No clearance floor space at ATM machine.
6. Steep curb ramp at Brio Tuscan Grille.
7. Steep curb ramp at Menchie's.
8. Steep curb ramp at sound corner of 73rd place.
9. Steep curb ramp at Stingray Sushi.
10. Steep curb ramp at Grimaldi's.
11. Lack of accessible seating in Quad.
12. Various barriers at NW1 parking.
13. Various barriers at NWB1 parking.
14. Various barriers at NE1 parking.
15. Various barriers at NEB1 parking.
16. Various barriers at SE1 parking.
17. Various barriers at NEB1 parking.
18. Various barriers at SW1 parking.
19. Various barriers at SWB1 parking.
20. Inaccessible curb front parking.

(Doc. 33 ¶ 14).

Defendants' expert witness, Karen Haney of Compliance Design Consultants, agreed with most of Mr. Farber's findings, except the finding that the lack of accessible

curbside parking is a violation of the ADA Accessibility Guidelines. She also partly disagreed with item five because the floor space had been cleared in front of the ATM, with thirteen because she found the number of noncompliant access aisles to be 3 instead of 4, and with sixteen because she found the number of noncompliant parking signs to be 3 instead of 4. (Doc. 35 ¶ 19)

Plaintiff filed suit seeking (1) an injunction prohibiting conduct of business at Scottsdale Quarter until barriers to Plaintiff's access are removed, (2) an order directing the removal of all access barriers at Scottsdale Quarter, (3) an award of attorney fees, costs, and litigation expenses under the ADA, and (4) compensatory damages under the Arizonans with Disabilities Act. (Doc. 1). Plaintiff then filed this Motion for Summary Judgment. (Doc. 32).

## III. ANALYSIS

To establish a prima facie case of discrimination by a public accommodation under the ADA, Mr. Normann must show (1) he has a disability, (2) Defendants own, operate, or lease a place of public accommodation, and (3) he was denied full and equal treatment because of his disability. 42 U.S.C. §§ 12182(a)-(b); *see Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Because Defendants admit that Scottsdale Quarter is a place of public accommodation, only the first and third elements are disputed on this Motion for Summary Judgment.

### A. Whether Mr. Normann has a disability

#### i. Legal Standard

The ADA defines a disability, in part, as "a physical or mental impairment that substantially limits one or more major life activities."[1]  42 U.S.C. § 12102(1)(A). A physical impairment is "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as [the] neurological [or] musculoskeletal" systems. 29 C.F.R. Pt. 1630.2(h)(1). "Major life activities" include, but are not limited to, caring for oneself,

---

[1] Plaintiff has not alleged he has a record of disability or that he is regarded as disabled, so the alternative definitions of disability under the ADA are not applicable. *See* 42 U.S.C. § 12102(1) (defining "disability" under the ADA).

- 4 -

performing manual tasks, walking, standing, lifting, and bending. *See* 42 U.S.C. § 12102(2)(A). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," but must "limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. Pt. 1630.2(j).

The definition of disability is "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the statute]." 42 U.S.C. § 12102(4)(A). "To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 859 (9th Cir. 2009) (internal citations and quotation omitted).

### ii. Analysis

Defendants assert Plaintiff has failed to prove he is a person with a disability because he has not shown that he is substantially limited in the major life activity of walking. (Doc. 34). In response to Defendants' interrogatories, Mr. Normann states that he suffers from "secondary progressive multiple sclerosis and spinal chord injury, which affect his mobility." (Doc. 35-1 ¶ 2). In his signed affidavit, he attests that he "requires the use of a wheelchair or walker for mobility" and relies on an oversized van to transport his wheelchair. (Doc. 32, 36). Defendants asked Mr. Normann to produce documents relating to his contention that is a person with a disability, but Plaintiff failed to produce any, claiming he had none is his possession. (Doc. 35 ¶ 5).

To carry his burden on this Motion for Summary Judgment, Mr. Normann needs to show that there is no issue of material fact regarding whether his disability limits his ability "to perform a major life activity as compared to most people in the general population." 29 C.F.R. Pt. 1630.2(j). Mr. Normann's statements that he has multiple sclerosis and uses devices for mobility assistance could, in the absence of controverting evidence or reason to doubt his self-serving statements, carry his burden of proving that he is substantially limited in the major life activity of walking. But on this record, his self-serving statements regarding his disability could reasonably be doubted. If true, his

disability would be corroborated by an abundance of objective evidence. Yet Mr. Normann has refused to produce any such documentary evidence. Medical records, a doctor's note, or a handicapped parking card would have sufficed. His refusal, despite appropriate discovery requests, to produce any verifying evidence suffices to put his own testimony in doubt and creates a material issue of fact regarding whether Mr. Normann is a person with a disability. Summary judgment must be denied on the issue.

> **B.     Assuming he is a person with a disability, was Mr. Normann denied full and equal treatment by Scottsdale Quarter?**
>
> > **a.     Standing**

To have standing under the ADA, a plaintiff must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the defendants' actions, and that the injury can be redressed by a decision in his favor. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A person with a disability suffers an injury-in-fact when he encounters a barrier at a place of public accommodation that "deprives him of full and equal enjoyment of the facility due to his particular disability." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011). Because the ADA Accessibility Guidelines "establish the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Chapman*, 631 F.3d at 947. Under the ADA, a plaintiff is injured the first time he or she encounters an architectural barrier that relates to his or her disability. *Id*. at 950. Once the first barrier is encountered, a plaintiff may sue for injunctive relief as to all other barriers related to his or her disability, regardless of whether he or she actually encountered the other barriers. *Id*. at 951.

In addition to showing he actually encountered a barrier related to his disability, a plaintiff must also demonstrate a "real and immediate threat of repeated injury" in the future. *Chapman*, 631 F.3d at 946 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). A plaintiff can demonstrate a real and immediate threat of future injury by demonstrating an intent to return to the place of public accommodation. *Id.* at 949.

- 6 -

Defendants argue that, assuming Mr. Normann is a person with a disability, he has not been injured by the alleged barriers because he has patronized Scottsdale Quarter frequently, has not been deterred from visiting or purchasing anything from its establishments, and intends to return. (Doc. 34). They also assert that Mr. Normann only experienced three of the twenty barriers identified by his expert and has not produced any evidence that he was injured by them.

The barriers, however, did not need to prevent Mr. Normann from patronizing Scottsdale Quarter for him to have standing to sue. Assuming for the purposes of this section that Mr. Normann is a person with a disability, Mr. Normann was injured the first time he encountered an architectural barrier related to his disability. Defendants' expert confirmed that the men's bathroom door did not comply with the ADA Accessibility Guidelines. Because the bathroom door did not comply with the ADA Accessibility Guidelines, it would have deprived a person with the handicaps Mr. Normann claims of full and equal access to the facilities. After encountering a single barrier, he would be entitled to bring suit for injunctive relief on account of all barriers present at Scottsdale Quarter that relate to his alleged disability. Furthermore, his frequent patronage of the shops at Scottsdale Quarter and his intent to return evidences a real risk of future injury. Accordingly, if Mr. Normann is a person with a disability, he has standing to sue for injunctive relief as to all architectural barriers related to his disability at Scottsdale Quarter, whether he actually encountered them or not.

**b. Architectural barriers**

To establish that he was denied full and equal treatment because of his alleged disability, Mr. Normann must prove that Defendants failed to "design and construct facilities . . . that are readily accessible and usable by individuals with disabilities." 28 C.F.R. Pt. 36.401(a). Although the ADA does not establish technical standards for accessibility, it directs the Department of Justice to issue regulations that create design standards for places of public accommodation. 42 U.S.C. § 12186(b). The Department of Justice's regulations must "be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board

[(the 'Access Board')]," a federal agency tasked with establishing the minimum guidelines for accessible public accommodations. *Miller v. Ca. Speedway Corp.*, 536 F.3d 1020, 1024-25 (9th Cir. 2008) (citing 42 U.S.C. § 12186(c); 29 U.S.C. § 792(b)). In 1991, the Access Board published its first ADA Accessibility Guidelines, and, after an opportunity for public comment and revision, the Department of Justice adopted the guidelines verbatim. 56 Fed.Reg. 35,408-01 (1991). The guidelines set technical standards "for accessibility to places of public accommodation . . . [that were] to be applied during the design, construction, and alteration of such buildings." 28 C.F.R. Pt. 36, App. A. Because Scottsdale Quarter was first constructed for occupancy after January 26, 1993, it is subject to the 1991 ADA Accessibility Guidelines. 28 C.F.R. Pt. 36.401(a).

### i. Parking spaces

The ADA Accessibility Guidelines state, "In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility." 28 C.F.R. Pt. 36, App. A § 4.6.2. The number of accessible spots required is dictated by the total parking available in each lot. *Id*. at § 4.1.2(5)(a). If a building is served by multiple lots, accessible spaces do not need to be provided in each lot and may be "provided in a different location if equivalent or greater accessibility, in terms of distance from an accessible entrance, cost and convenience is ensured." *Id*.

Scottsdale Quarter is a private facility with two large parking garages that serve its ten buildings. (Doc. 35; DSOF ¶¶ 15-17). It also offers fifty-four curbside, parallel parking spaces along the private streets that traverse its property. (*Id*.). All of the accessible parking spaces serving the property are located in the two garages. (*Id*.). Although the parties agree that Scottsdale Quarter offers the required number of accessible spaces, Mr. Normann asserts that, under the ADA Accessibility Guidelines, Scottsdale Quarter is required to provide accessible spaces not only in its garages, but also along its private streets.

Nothing in the ADA Accessibility Guidelines requires Scottsdale Quarter to

provide accessible curbside parking in addition to the accessible parking it already offers in its garages. The accessibility requirements implemented by the ADA are detailed. As written, they apply only to parking lots and facilities and make no mention of curbside parallel parking spaces. *See, e.g.*, 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(a) (mentioning "parking lot"); § 4.6.2 (mentioning "parking facilities"). When constructing its facility, Scottsdale Quarter verified that it was not required to construct accessible curbside parking by consulting with an ADA technical advisor at the U.S. Department of Justice. (Doc. 35-1). The technical advisor confirmed that because parallel, storefront parking spaces are not part of a parking lot or parking facility, they are not covered by the ADA standards of accessible design. *See* 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(a).

Plaintiff suggests the garages do not provide appropriate accessible parking because the *ADA Guide for Small Businesses* requires property owners to "[l]ocate accessible parking spaces as close as possible to the accessible entrances on an accessible route to the building." Office of Small Bus. Admin., Americans with Disabilities Act: ADA Guide for Small Businesses (1999). He interprets this instruction to require property owners to locate accessible parking on the shortest route between store entrances and any customer parking. (Doc. 32). The *ADA Guide for Small Businesses*, however, provides informal assistance to small businesses and its guidelines are not "legal interpretations of the [ADA]." ADA Guide for Small Businesses, pg. i. Even if the guide was binding, Plaintiff's reading is overbroad. The guideline does not require accessible parking immediately adjacent to every tenant's storefront, but, rather, requires accessible parking to be located as close as possible to entrances that provide access to the entire facility.

The two parking garages serve all ten buildings at Scottsdale Quarter, and the accessible spaces are located on "the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility." 28 C.F.R. Pt. 36, App. A § 4.6.2; (DSOF ¶¶ 41-44). Patrons with disabilities can park on the ground floor of either garage and access a route that connects all of the property's buildings. (DSOF ¶¶ 41-44). This is exactly the type of accessibility contemplated by the guidelines. Because Scottsdale Quarter's

parking facilities comply with the ADA Accessibility Guidelines, and this Motion presents no factual dispute over the type and amount of parking offered at Scottsdale Quarter, the Court will issue an order for Plaintiff to show cause as to why summary judgment should not be granted for the Defendants on the issue of accessible parking.

### ii.     Other features

The parties agree that eleven items identified by Mr. Normann's expert violate the ADA Accessibility Guidelines. The undisputed items, as labeled in Plaintiff's expert report, are Items 1-4, 11, 12, 14, 15, and 17-19. (Doc. 35 ¶ 19). Accordingly, Plaintiff has carried his burden of proving there is no issue of material fact surrounding the barriers identified by his expert in Items 1-4, 11, 12, 14, 15, and 17-19 and that the identified barriers violate the ADA Accessibility Guidelines.

In addition to the barriers discussed above, Defendants agree that all but two of the barriers identified in Plaintiff's expert report under Items 13 and 16 violate the ADA Accessibility Guidelines. Item 13 covers parking in the North parking garage on the level designated as B1. Under Item 13, Plaintiff's expert identifies various parking barriers, including narrow access aisles, steep ramps, and low vertical parking space signs. Defendants agree with all of the barriers listed under Item 13 except they argue one of the identified access aisles is actually compliant. Plaintiff's expert claims the disputed aisle, which is required to be at least 60 inches wide, is only 56-57 inches wide. Defendants' expert contends the aisle is actually 93 inches wide. (Doc. 33-4; Doc. 35-1).

A similar dispute surrounds an accessible parking sign identified under Item 16 in the South parking garage. Plaintiff's expert asserts that four accessible parking signs are placed only 48 inches above the ground when they are required to be placed 60 inches above the ground. Defendants' expert contends one of the four identified signs is compliant and hangs 60 inches above the ground. (Doc. 33-4; Doc. 35-1). Because there are material issues of fact surrounding the width of the disputed access aisle and the height of the disputed sign, summary judgment cannot be granted for Plaintiff on those barriers. In contrast, there is no issue of material fact regarding the remaining barriers identified under Items 13 and 16. Summary judgment, however, cannot be granted for

Plaintiff because there is a dispute of material fact regarding whether Plaintiff is a person with a disability.

Defendants dispute that the access ramps identified in Items 6 through 10 of Plaintiff's expert report violate the ADA Accessibility Guidelines. Although Defendants agree that the slopes of the ramps technically exceed the maximum slope allowed by guidelines, they argue that the amount by which the slopes exceed the maximum slope permitted is negligible. (Doc. 35 ¶¶ 60-65). The ramps, identified as Items 6 through 10 in Plaintiff's expert report, exceed the maximum slope allowed by .67%, .77%, .97%, 1.07%, and 1.27%. (*Id*.) Defendants argue these deviations are not violations because they are minor and fall within accepted construction deviations. (Doc. 34).

As a general rule, new construction must strictly comply with the ADA Accessibility Guidelines, and "the difference between compliance and noncompliance . . . is often a matter of inches." *Chapman*, 631 F.3d at 946-47; *see, e.g.,* ADA Accessibility Guidelines § 4.16.4 (requiring grab bar behind water closets to be at least thirty-six inches long); *id.* § 4.19.6 (stating that "[m]irrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 in (1015 mm) above the finish floor"). The ADA Accessibility Guidelines permit slight deviations by providing that "[a]ll dimensions are subject to conventional building industry tolerances for field conditions." 28 C.F.R. Pt. 36, App. A § 3.2. Plaintiff has failed to show that these deviations exceed industry standards, so summary judgment cannot be granted for Plaintiff on the ramps identified in Items 6 through 10. Summary judgment also cannot be granted on Item 5, the ATM that was blocked by a soda machine, because the parties have not briefed the issue sufficiently.

## IV. CONCLUSION

Although Mr. Normann has carried his burden of showing that certain barriers at Scottsdale Quarter violated the ADA Accessibility Guidelines, the Motion for Summary Judgment must be denied because there is a dispute of material fact over whether he is a person with a disability. Additionally, on the undisputed facts, Scottsdale Quarter's

parking facilities comply with the ADA Accessibility Guidelines.  Therefore, Plaintiff's Motion for Summary Judgment will be denied, and Plaintiff will be ordered to show cause why summary judgment should not be granted to Defendants on the issue of accessible parking.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 32) is denied.

IT IS FURTHER ORDERED that Plaintiff show cause by December 4, 2013, why summary judgment should not be granted for Defendants on the issue of accessible parking.

Dated this 14th day of November, 2013.

_____
Neil V. Wake
United States District Judge